UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BALBOA CAPITAL CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-108-B |
| WCS LENDING LLC, | § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff's Motion for Default Judgment (doc. 8), filed on March 11, 2014. For the reasons provided below, the Motion is **GRANTED in part** and **DENIED in part**.

### I.

### BACKGROUND

Plaintiff Balboa Capital Corporation ("Balboa") filed its Complaint with this Court on January 14, 2014. Doc. 1, Orig. Compl. Balboa alleges that it entered into a Master Lease Agreement (the "Lease") with Defendant WCS Lending LLC ("WCS") on January 31, 2013, under which Balboa was to deliver equipment to WCS in exchange for WCS's monthly payments of $2,034.25 for use of the equipment over the course of thirty-six months. *Id.* at 2–3; Doc. 1-1, Master Lease Agreement. Balboa maintains that it fully performed its obligation by delivering the equipment to WCS. Orig. Compl. 4. However, Balboa claims that WCS failed to make the required payments under the Lease. *Id.* at 3. Balboa asserts that it demanded that WCS pay the amounts due and return the leased equipment. *Id.*; Doc. 1-2, Notice of Default. Balboa contends that WCS "has failed and refused" to pay for or return the equipment; it accordingly filed this action against WCS, alleging two

claims for breach of contract and a request for declaratory judgment. Orig. Compl. 2–6.

Though process was served on WCS on January 17, 2014, WCS has yet to file an answer or otherwise appear in this case. Doc. 5. As a result, the Clerk of Court entered a default judgment against WCS on March 11, 2014. Doc. 7. That same day, Balboa filed its present Motion for Default Judgment. Doc. 8. More than twenty-one days have passed since this filing, and WCS has not responded. The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *See, e.g., Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2–3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default

are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

### III.

### ANALYSIS

*A.   Whether the Entry of Default Judgment is Appropriate*

In considering the six factors outlined in *Lindsey*, the Court finds they weigh in favor of granting a default judgment. WCS has not filed any responsive pleadings in the present matter. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). WCS's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Balboa's] interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that WCS's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, WCS has had eight months to respond to Balboa's Complaint and six months to respond to the present Motion, and still it has filed nothing to explain its reticence. *Cf. Elite v. KNR Group*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining that failure to appear was due to financial privation). WCS's complete failure to respond during this time therefore "mitigat[es] the

harshness of a default judgment" against it. *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by WCS. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is appropriate under these circumstances.

B.   *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Due to its default, WCS is deemed to have admitted the allegations set forth in Balboa's Complaint. Nonetheless, the Court must review the pleadings to determine whether Balboa can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

Balboa asserts two claims for breach of contract against WCS, as well as one request for declaratory judgment concerning its rights under the same lease contract. Orig. Compl. 2–6. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Contracts for the lease of goods are governed by Chapter 2A of the Texas Business and Commerce Code. Tex. Bus. & Com. Code § 2A.102; *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 703 (Tex. App.—Dallas 2012, no pet.).

In its first claim for breach of contract, Balboa requests monetary damages arising from WCS's failure to perform under the Lease. Orig. Compl. 2. Balboa's Complaint alleges that on

January 31, 2014, WCS executed the Lease and delivered it to Balboa. *Id.* Balboa further asserts that it fully performed its obligations under the Lease by delivering equipment to WCS. *Id.* at 3. Under the lease agreement, WCS was required to make monthly payments of $2,034.25 for the leased equipment for the thirty-six month duration of the Lease. *Id.*; Doc. 1-1, Equipment Lease Schedule No. 1. Balboa maintains that WCS did not make the required payments, prompting Balboa to send a demand letter requesting that WCS pay the amounts due and return the leased equipment. Orig. Compl. 3; Doc. 1-2, Notice of Default. In its Complaint, Balboa contends that it suffered damages as a result of this breach and that WCS has a "balance due and owing under the terms of the Lease through January 14, 2014 in the amount of $81,613.26, with interest continuing to accrue at the rate of $21.47 per diem." Orig. Compl. 3. Due to WCS's default, the Court accepts these allegations as true and finds that they establish a viable claim for breach of contract. *See Nishimatsu Constr.*, 515 F.2d at 1206.

In its second claim for breach of contract and its related request for declaratory judgment, Balboa seeks the return of the leased equipment. Orig. Compl. 4–5. Balboa reiterates that the Lease is a valid contract and that it fully performed its contractual obligations by delivering the leased equipment to WCS. *Id.* Balboa alleges that WCS breached the contract by failing to return the equipment upon demand. *Id.* at 4. It asserts that WCS's "failure to return [the] equipment has caused Balboa to incur economic damages" of an unspecified amount. *Id.* at 4. Balboa further requests a declaratory judgment establishing that Balboa is entitled to immediate physical possession of the equipment. *Id.* at 5. The Court accepts these allegations as true because of WCS's default and finds that they constitute a viable cause of action for breach of contract. *See Nishimatsu Constr.*, 515 F.2d at 1206. Therefore, the Court finds that Balboa's Complaint provides a sufficient basis for judgment and **GRANTS** Balboa's Motion for Default Judgment with respect to WCS's liability.

C.    *Relief Sought*

Balboa requests monetary damages in the amount owed to it under the Lease, together with interest, attorneys' fees, and court costs, as well as a declaration that it is entitled to immediate possession of the leased equipment. Doc. 8, Mot. for Default J.

1.    <u>Damages</u>

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002); *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). Damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Though Balboa asserts that it requests damages for a "sum certain," the Court is unable to trace the computation of such amount due to the lack of explanations and evidence in Balboa's supporting documents. Mot. for Default J. 2.  In its Motion for Default Judgment, Balboa requests $82,515.00, which presumably includes interest to date, continuing to accrue $21.47 in interest per day until the date judgment is entered. *Id.* at 2–3. Balboa does not explain its method of calculating this figure based on the lease agreement, but rather relies on a single affidavit from a Balboa "representative," which further reiterates that WCS owes Balboa this exact amount. Doc. 8-2, Aff. of Todd Edson ¶ 11.

According to the lease contract between Balboa and WCS, WCS was to lease the equipment for a period of thirty-six months in exchange for monthly payments of $2,034.25, with the first and

last months' payments (totaling $4,068.50) due at signing. Doc. 1-1, Equipment Lease Schedule No. 1. The Lease contains a provision allowing Balboa to recover the entire outstanding balance of the lease, past and then-remaining, in the event of WCS's breach. Doc. 1-1, Master Lease Agreement ¶ 12. The provision further stipulates that in the event of a default, WCS would be credited for amounts already paid, if any. *Id.* It is unclear from the record whether WCS made the initial first and last months' payments and whether it made any subsequent payments prior to its default under the Lease. Neither Balboa's Complaint nor its Motion for Default Judgment clarify when WCS discontinued its payments and how many of its payments remain outstanding. Furthermore, the Court declines to rely on only one affidavit from a Balboa "representative" asserting the amount due without providing context or explanation. *See Beachhead, L.P. v. Solar Night Indus., Inc.*, No. 3:08-CV-0718-D, 2008 WL 4692856, at *2 (N.D. Tex. Oct. 23, 2008). In order to accurately calculate the amount due to Balboa under the Lease, the Court requires specific allegations with respect to any payments WCS has made.

      Irrespective of whether WCS has made payments that Balboa has failed to mention in its pleadings, the Court finds no justification for the amount of damages requested. The fixed sum of damages alleged is repeated assertively throughout Balboa's filings, but it remains unsupported by mathematical calculation or any rationalization or itemization. Assuming that Balboa is seeking damages in the amount of all monthly payments that would be due over the course of the thirty-six month duration of the Lease—a fact that has not been articulated in the pleadings—the Court nonetheless fails to discern how the figure $82,515.00 is computed. Thirty-six monthly payments of $2,034.25 amount to $73,233.00, which is far below the damages requested. The addition of possible interest accrued since the default—even if such interest began to accrue as of the date of the Lease—similarly fails to yield a total of $82,515.00. Because the amount of damages cannot be

determined with mathematical calculation by reference to the pleadings and supporting documents, the Court is unable to award damages. The Court therefore requires that Balboa provide an explanation detailing the sums requested as well as any supporting facts. *See James*, 6 F.3d at 310.

Given the Fifth Circuit's reluctance to award damages on default judgment without a hearing or detailed affidavits establishing the necessary facts, the Court finds that it lacks sufficient evidence to justify Balboa's requested damages award. *United Artists*, 605 F.2d at 857. Balboa's Motion for Default Judgment with respect to the damages award is **DENIED** pending supplementation of the record at a hearing before the Court to address the issues noted above. This ruling moots Balboa's request for interest, on which the Court will defer judgment until it rules on the damages award.

2.   Attorneys' Fees

Balboa requests $5,000.00 in attorneys' fees. Doc. 8-4, Default J. 2. The Texas Civil Practice and Remedies Code permits an award of reasonable attorneys' fees to a prevailing party on a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8). "To recover attorneys' fees under Section 38.001, a party must (1) prevail on a cause of action for which attorneys' fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)). While the Court declines to award damages at this time, making Balboa ineligible for attorneys' fees, the Court will explain, in the interest of judicial economy, what deficiencies Balboa must address so as to recover attorneys' fees after the record is supplemented at a hearing on this matter. *See generally Busi & Stephenson Ltd. v. U.S. Trade Fin. Corp.*, No. 3:13-CV-3935-B, 2014 WL 1661213, at *4 (N.D. Tex. Apr. 5, 2014).

The Fifth Circuit has described the basic procedure and standard for determining attorneys' fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jiminez v. Wood Cnty.*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Though attorneys' fees are mentioned in the Lease, there is no specification as to the amount to be awarded or the manner in which they are to be computed.[1] Doc. 1-1, Master Lease Agreement ¶ 12. Balboa provides no support for an award of attorneys' fees; the record contains neither documentation describing the amount of time Balboa's attorneys spent on this matter nor evidence of the prevailing hourly rate for similar cases. Balboa instead makes the following request in a sample order that it provides to the Court along with its Motion:

> IT IS FURTHER ORDERED that Balboa recover from Defendant the sum of $5,000 as reasonable attorneys' fees in connection with the prosecution of this action.

---

[1] The Lease provides that "[y]ou also agree to reimburse Us on demand for all reasonable expenses of collection and enforcement (including, without limitation, reasonable attorneys' fees and other legal costs . . . ."

Doc. 8-4, Default J. 2. The Court declines to award attorneys' fees based on a bare assertion of what is "reasonable" overall, because such an award would bypass the Fifth Circuit's requirements. *Smith*, 478 F. App'x at 124. The Court requires documentation indicating the hours worked by Balboa's attorneys as well as evidence of the prevailing rate for similar work. Accordingly, Balboa's Motion for Default Judgment with respect to attorneys' fees is **DENIED** pending supplementation of the record at a hearing before the Court.

3. Costs

Balboa requests that court costs be assessed against WCS, but it does not specify the amount or nature of such expenses. Doc. 8-4, Default J. 2. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. The "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (quoting *Cook Children's Med. Ctr. v. The New England PPO Plan of Gen. Consolidation Mgmt., Inc.*, 491 F.3d 266, 274 (5th Cir. 2007)).

The Lease states that WCS may be liable for "other legal costs," but such a broad reference to costs does not offer the Court guidance in awarding the costs incurred in this matter. Doc. 1-1, Master Lease Agreement ¶ 12. Balboa's present Motion similarly fails to indicate the fees and costs for which it seeks reimbursement. Given the strict nature of the rule regarding such awards, the Court requires that Balboa specify the amount of costs incurred and provide an itemized list of

reimbursements sought. Accordingly, Balboa's Motion for Default Judgment with respect to costs is **DENIED** pending supplementation of the record at a hearing before the Court.

    4.    <u>Declaratory Judgment</u>

Finally, in addition to its request for damages, Balboa seeks declaratory judgment that it is entitled to immediate return of the leased equipment. Doc. 8-4, Default J. 2. "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). For the reasons stated below, the Court declines to issue a declaratory judgment concerning Balboa's right to immediate possession of the equipment. Such a declaration, combined with the award of damages—to be issued upon supplementation of the record—would entitle Balboa to multiple recovery and would place it in a better position than it would have been in had the lease agreement been performed.

In a lease of goods under Article 2A of the Texas Business and Commerce Code, if a lessee has accepted goods but has failed to make payment, the lessor can seek "action for the rent," which includes damages for accrued and unpaid rent, the remaining rent for the lease term, and any incidental damages, less expenses saved in consequence of the breach. Tex. Bus. & Com. Code § 2A.529(a). The section further provides that if the lessor collects such damages, as Balboa requests in the present case, the lessee is entitled to possession of the goods for the remainder of the lease term in accordance with the lease. Tex. Bus. & Com. Code § 2A.529(d).

However, the lease agreement between Balboa and WCS departs from Article 2A of the Texas Business and Commerce Code and instead contains a list of remedies that Balboa can exercise in the event of WCS's breach. Doc.1-1, Master Lease Agreement ¶ 12. The Lease allows Balboa to concurrently seek the outstanding balance of the lease as well as retake possession of the goods. *Id.*

Under the terms of the lease agreement,

> If [WCS is] in default, [Balboa] may do any one or more of the following, at [Balboa's] option, concurrently or separately: . . . (B) require [WCS] to return the Equipment leased . . . (D) . . . require [WCS] to pay [Balboa], on demand an amount equal to the sum of (i) all lease Payments and other amounts then due and past due, (ii) all Lease Payments for the then-remaining Present Term(s)

*Id.* Therefore, the Lease purports to grant Balboa the right to simultaneously retake possession and recover the full rent value of the leased equipment. *Id.*

The comments to the Texas Business and Commerce Code's section on lessors' action for rent explain that "*absent a lease contract provision to the contrary*, an action for the full unpaid rent . . . is available . . . only if the lessee retains possession of the goods." Tex. Bus. & Com. Code § 2A.529, cmt. 1 (emphasis added). This suggests that a lessee may be able to contract to waive such a right. This position finds support in the Code's section on modification or impairment of rights and remedies:

> Except as otherwise provided in this chapter, the lease agreement may include rights and remedies for default in addition to or in substitution for those provided by this chapter and may limit or alter the measure of damages recoverable under this chapter.

Tex. Bus. & Com. Code § 2A.503(a). The comments to the same provision indicate that

> A significant purpose of this Part is to provide rights and remedies for those parties to a lease who fail to provide them by agreement or whose rights and remedies fail of their essential purpose or are unenforceable. However, it is important to note that *this implies no restriction on freedom to contract*.

Tex. Bus. & Com. Code § 2A.503, cmt. 1 (emphasis added). Texas courts have allowed parties to contractually waive rights granted by the Business and Commerce Code. *See, e.g. Choice Asset Mgmt., Inc. v. CIT Tech. Fin. Servs., Inc.*, No. 07-12-00304-CV, 2013 WL 5039340, at *3 (Tex. App—Amarillo Sep. 11, 2013, no pet.) (mem. op.) ("[Plaintiff] expressly waived any and all rights

conferred upon a renter by Article 2A in the lease it signed . . . . Thus, it cannot invoke that which it waived" (internal quotations omitted)).

Here, WCS agreed to a provision similar to that in *Choice Asset*:

> To the extent permitted by law, You hereby waive any and all rights and remedies conferred upon You under UCC Sections 2A-303 and 2A-508 through 522.

Doc. 1-1, Master Lease Agreement ¶ 6. However, the lessee's right to retain possession after paying an action for the rent is located in section 2A.529 of the Texas Business and Commerce Code, which is not covered by the waiver section of the Lease and therefore remains in effect. *Id*. As a result, the waiver provision does not restrict WCS's ability to remain in possession of the leased equipment in the event it must pay damages in the amount of all payments under the Lease.

Moreover, the purpose of contractual remedies under the Texas Business and Commerce Code is to put the aggrieved party in the position that it would have been in had the contract been fully performed. Tex. Bus. & Com. Code § 1.305(a); *see also 1/2 Price Checks Cashed v. United Auto Ins. Co.*, 344 S.W.3d 378, 388 (Tex. 2011); *cf.* 12 John E. Krahmer, *Tex. Prac., Texas Methods of Practice* § 26.80 ("Multiple remedies are barred only if the effect is to put the lessor in a better position than the lessor would have been in had the lessee fully performed under the lease contract."). The remedy that Balboa seeks here seems to place it in a *better* position than had the contract with WCS been fully performed; if awarded all relief requested, Balboa would receive the amount of all payments it would have been entitled to under the Lease, but it would also retrieve its equipment over a year prior to the end of the lease term.

Even though the Lease provision setting out Balboa's remedies in the event of WCS's default appears to entitle Balboa to return of the equipment, the Court is reluctant to issue the requested declaratory judgment because it remains unclear whether this would interfere with Balboa's proposed

damages recovery for the full lease payments. Although the Court does not award Balboa damages at this time, the issuance of the declaration could potentially preclude Balboa's recovery of damages once it provides additional supporting evidence. Due to the lack of facts necessary to assess Balboa's recovery, the Court **DENIES** Balboa's Motion for Default Judgment with respect to the declaratory judgment pending supplementation of the record at a hearing before the Court.

## IV.

## CONCLUSION

For the foregoing reasons, Balboa's Motion for Default Judgment is **GRANTED in part** and **DENIED in part**.

After reviewing the relevant filings, the Court finds that a hearing is necessary to clarify and supplement the assertions made in Plaintiff's Motion for Default Judgment. Therefore, a mandatory hearing is set for:

> **Wednesday, October 22, 2014 at 2:00 p.m.**
> Before Judge Jane J. Boyle
> Courtroom 1516, Fifteenth Floor
> United States Courthouse
> 1100 Commerce Street
> Dallas, Texas 75242

At the hearing, counsel for both parties shall be present and prepared to argue their respective positions on Plaintiff's Motion for Default Judgment (doc. 8). Balboa is encouraged to provide the Court with authority and arguments to support its request for damages, attorneys' fees, costs, and declaratory judgment. Defendant is to be notified of the hearing by Certified Mail Return Receipt Requested. Counsel for each party shall contact the Court **no later than Friday, October 17, 2014**, to confirm its attendance.

- 15 -

SO ORDERED.

SIGNED: September 29, 2014

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE